**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRCT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | JOHN S. STEWART, JR., | : | CHAPTER 7 |
| | | : | |
| | Debtor | : | Bky. No. 05-31747ELF |
| | | : | |

_____

| | | |
|---|---|---|
| JOHN S. STEWART, JR., | : | |
| | : | |
| Plaintiff, | : | Adv. No.  06-119 |
| | : | |
| v. | : | |
| | : | |
| CHRISTINE C. SHUBERT, TRUSTEE | : | |
| | : | |
| Defendant | : | |

_____


# M E M O R A N D U M   O P I N I O N

**BY:   ERIC L. FRANK, U.S. BANKRUPTCY JUDGE**


## I.   INTRODUCTION

At issue in this case is the ownership of the residential real property located at

2521 S. Garnet Street, Philadelphia, PA ("the Property").

More than two (2) years before the commencement of this bankruptcy case,

Caroline Stewart ("Mrs. Stewart") executed and delivered a deed conveying record

ownership of the Property to the debtor, her son, John S. Stewart ("the Debtor").  A few

months after the transfer, the Debtor executed a deed that purported to convey a one-half

interest in the Property to his sister, Susan D. Harris ("Ms. Harris").

1

Mrs. Stewart and the Debtor contend that Mrs. Stewart transferred the Property for estate planning purposes only and that she did not intend to transfer her beneficial interest in the Property to the Debtor.  The Trustee contends that as of the commencement of the case, the Debtor held a beneficial interest in the Property that passed into the bankruptcy estate.  Therefore, I must decide whether the Debtor was the owner of the Property when this case was filed or whether his record ownership was subject to a resulting trust in favor of Mrs. Stewart.

The Trustee has filed a motion to sell the Debtor's interest in the Property pursuant to 11 U.S.C. §363(h) ("the Motion").  In addition to contesting the Trustee's Motion, the Debtor has filed an adversary complaint seeking to enjoin the Trustee from selling the Property.

Trial of both the Motion and the adversary proceeding was held on December 1, 2007.  After consideration of the parties' post-trial briefs, I will deny the Trustee's Motion.[1]  Also, I will enter judgment against the Debtor in the adversary proceeding because injunctive relief against the Trustee is not necessary.[2]

---

[1]     This Memorandum constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and Fed. R. Civ. P. 52.

[2]     One of the necessary elements for the issuance of an injunction is a risk of irreparable harm to the movant.  See, e.g., Saudi Basic Industries Corp. v. Exxon Corp., 364 F.3d 106, 112 n.6 (3d Cir. 2004).  Because I am denying the Motion, there is no risk of irreparable harm to the Debtor, making the issuance of an injunction inappropriate.

2

## II.    <u>FACTS</u>

The Debtor commenced this chapter 7 bankruptcy case on September 1, 2005.  In

his bankruptcy Schedule A, he disclosed his record ownership interest in two properties:

(1) a property located at 2421 S. Garnet Street, Philadelphia, PA; and

(2) the Property (<u>i.e.</u>, 2521 S. Garnet Street, Philadelphia, PA).

The Debtor resides at 2421 S. Garnet Street with his spouse and daughter.  His

mother, Mrs. Stewart, resides in the Property. (N.T. 12).  In Schedule A, the Debtor

disclosed his interest in the Property as "1/2 Bare Legal Title of Caroline Stewart's

property."

Mrs. Stewart obtained title to the Property on April 6, 1951 when she purchased it

jointly with her husband.  Her husband died in July 1990.  (Exhibit "B").  In 2005, when

this bankruptcy case was filed, there was no mortgage against the Property.  (Exhibit "I").

The Debtor first obtained legal title to the Property from Mrs. Stewart through a

fee simple deed dated December 9, 2002 ("the First Deed") for the sum of one dollar.[3]

(Exhibit "B").  Mrs. Stewart had the First Deed prepared by a third party -- a staff person

working in the office of her state legislative representative  --  in an attempt to minimize

---

[3]     In relevant part, the First Deed States:

> the said Grantor for and in consideration of the sum of ONE
> ($1.00) DOLLAR and 00/100 lawful money of the United States of
> America, unto her well and truly paid by the said Grantee, at or
> before the sealing and delivery hereof, the receipt whereof is
> hereby acknowledged, hath granted, bargained and sold, released
> and confirmed, and by these presents doth grant, bargain and sell,
> release and confirm unto the said Grantee his heirs and assigns, in
> fee.

Ex. B. at p. 2.

inheritance taxes on her estate.  (N.T. 15, 39).  More specifically, Mrs. Stewart believed,

based on information given to her by others, that avoiding probate is a desirable thing and

that putting the Property in her son's name would accomplish that goal.  (N.T. 24, 39).

Both the Debtor and Mrs. Stewart understood that the transaction was carried out for

estate planning purposes.  When the First Deed was prepared and executed, Mrs. Stewart

and the Debtor subjectively considered Mrs. Stewart as continuing to be the owner of the

Property.[4]

Several months later, Mrs. Stewart realized that in conveying the Property to her

son, she had inadvertently omitted her daughter, Ms. Harris, from this estate planning

effort.  Therefore, she requested that the Debtor transfer half of his interest in the

Property to Ms. Harris.  The Debtor promptly complied with his mother's request.  On

March 6, 2003, he executed a deed ("the Second Deed"), which purported to transfer the

Property from John S. Stewart to "John S. Stewart and Susan D. Harris" for the recited

sum of one dollar. (Exhibit "D").  The Second Deed was prepared at Mrs. Stewart's

request by the same person who prepared the First Deed.  (N.T. 17).

Mrs. Stewart has lived at the Property for at least the past 51 years.  Currently, she

lives there alone.  Her monthly income is derived from a Social Security check and two

pension checks.  Mrs. Stewart pays the bills and taxes associated with the Property out of

a bank account.  That account is titled jointly in the names of Mrs. Stewart and the

Debtor.  However, the Debtor neither contributes to the account nor draws on the account

for his own benefit.  His name was put on the account at the suggestion of the bank when

---

[4]     The Debtor testified that his mother told him that "the house would remain hers until
she died."  (N.T. 28; see also N.T. 24).  I found the Debtor's testimony fully credible.
Mrs. Stewart testified that she considered the house to be hers "[u]ntil I leave this world."
(N.T. 41).  I also found Mrs. Stewart's testimony credible.

Mrs. Stewart's husband died.  (N.T. 36-38).  Although the Debtor does not pay the

expenses of the Property (e.g., maintenance, utilities, real estate taxes), as the record

owner of the Property, he claimed a federal tax deduction for the real estate taxes paid by

Mrs. Stewart in 2003 and 2004 when he filed his personal income tax returns for those

years.  (N.T. 17-21).

### III.   THE CONTENTIONS OF THE PARTIES

Pursuant to the Motion filed on February 8, 2006, the Trustee seeks to sell the

Property pursuant to the authority given her by 11 U.S.C. § 363(h).  Section 363(h)

authorizes a Trustee to sell both the interests held by the estate and a co-owner of

property, if:

> **(1)** partition in kind of such property among the estate and such co-owners is impracticable;

> **(2)** sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

> **(3)** the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

> **(4)** such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

The threshold requirement under §363(h) is that the Debtor have "an undivided

interest as a tenant in common, joint tenant, or tenant by the entirety."

The Trustee asserts that this requirement is satisfied because the Debtor and Ms. Harris were tenants in common in the Property when the case was filed.  In urging this conclusion, the Trustee relies upon the two record transfers of title that concluded with the delivery of the Second Deed (the deed purporting to convey a one-half interest in the Property to the Debtor and Ms. Harris).

The Trustee argues that Mrs. Stewart conveyed a fee simple title to the Debtor through the execution of the First Deed.[5]  Then, according to the Trustee, one-half of this fee simple interest was subsequently transferred to Ms. Harris through the Second Deed. Therefore, the Trustee contends that the Debtor and Ms. Harris own the Property as tenants in common.  Because the Trustee contends that the remaining statutory requirements under §363(h) for such a sale are also met, the Trustee believes that she is entitled to sell both parties' interests in the Property.[6]

The Debtor asserts that Mrs. Stewart's transfer of the Property to him was subject to a resulting trust in favor of Mrs. Stewart.  The Debtor contends that he has only bare legal title and that Mrs. Stewart is the beneficial owner of the Property.  If the Debtor's analysis is correct, upon the commencement of the case, the bankruptcy estate succeeded

---

[5]    The First Deed uses the word "grant" which by Pennsylvania law is sufficient to convey fee simple title to the property.  21 P.S. §2.

[6]    If Mrs. Stewart conveyed her beneficial interest in the Property to the Debtor and the Debtor then transferred a one-half interest in the Property to his sister for one dollar ($1.00) less than four (4) years before the filing of his bankruptcy case, ordinarily, one would expect the Trustee to invoke her avoiding powers to set aside the second transfer. See 11 U.S.C. §544; cf. In re Lenox Healthcare, Inc., 343 B.R. 96,  100-01 (Bankr. D. Del. 2006) (if a debtor holds property in trust, transfers of such property are not subject to avoidance).  If the second transfer were avoided, the bankruptcy estate would be entitled to all of the net proceeds from the sale of the Property.  The Trustee has not attempted to do so.  Perhaps the Trustee believes that the net proceeds derived from the Debtor's one-half interest in the Property would suffice to pay all claims and administrative expenses in this case.

to only bare legal title in the Property,[7] and sale of the Property would be not be

appropriate under §363(h).[8]

## IV.      DISCUSSION

### A.

### 1.  Pennsylvania Law Applies

As a general principle, the property rights that become part of the bankruptcy

estate pursuant to 11 U.S.C. §541 are determined by applicable nonbankruptcy law. Thus,

unless overridden by specific provisions of the Bankruptcy Code, the property rights of

the Debtor in this case include and are limited by any restrictions arising under applicable

---

[7]      See 11 U.S.C. §541(d):

> Property in which the debtor holds, as of commencement of the case, only
> legal title and not an equitable interest . . . becomes property of the
> estate . . . only to the extent of the debtor's legal title to such property,
> but not to the extent of any equitable interest in such property that the
> debtor does not hold.

[8]      See In re Columbia Gas Systems, Inc., 997 F.2d 1039, 1054 (3d Cir. 1993), cert.
denied, 510 U.S. 1110, 114 S.Ct. 1050 (1994) (citing §541(d) for the proposition that if
property is held by the debtor in trust, the property is not property of the estate).  If
the Debtor's interest in the Property is a bare legal interest and if one conceptualizes the
possibility of a sale of that interest, it is difficult to see how the Trustee could meet the
requirements of §363(h)(3) in this case.  Generally, when a trustee sells both the estate's
interest and the co-owner's interest in property pursuant to 11 U.S.C. §363(h), the trustee
must account to the co-owner for the co-owner's rightful share of the net proceeds.  If the
bankruptcy estate holds only bare legal title, it would follow that all of the value of the
property must be attributed to the beneficial owner and the bankruptcy estate would
receive nothing from the sale.  See In re Combustion Engineering, Inc., 292 B.R. 515,
519 (Bankr. D. Del. 2003) (§541(d) mandates that debtor administer trust property in
accordance with terms of the trust for benefit of the beneficial owner of the property); In
re W.L. Bradley, Inc., 75 B.R. 505, 513 (Bankr. E.D. Pa. 1987)  (corpus of a trust in favor
of a non-debtor beneficiary is not property of the estate).  In these circumstances, and in
particular, as in this case, where the property is the long-time residence of the beneficial
owner, it is difficult to see how the benefit to the bankruptcy estate would outweigh the
detriment to the co-owner, as is required by §363(h).

state law.  E.g., Butner v. United States, 440 U.S. 48, 55 (1978); In re Brannon, 476 F.3d

170, 176 (3d Cir. 2007).

In this case, the issue is whether the Debtor's rights in the Property (and therefore,

the bankruptcy estate's rights) are subject to a resulting trust.  To make that

determination, I apply Pennsylvania law.[9]

## 2.  Resulting Trusts in Pennsylvania

The Pennsylvania appellate courts have regularly cited with approval and relied

upon chapter 12 of the Restatement (Second) of Trusts (American Law Institute 1959)

("the Restatement 2d"), which is titled "Resulting Trusts."  E.g.,  Mooney v. Greater New

Castle Development Corp., 510 Pa. 516, 521, 510 A.2d 344, 346, cert. denied, 479 U.S.

915, 107 S.Ct. 317 (1986); Masgai v. Masgai, 460 Pa. 453, 458, 333 A.2d 861, 864

(1975); Yuhas v. Schmidt, 434 Pa. 447, 458, 258 A.2d 616, 621-22 (1969); Policarpo v.

Policarpo, 410 Pa. 543, 545, 189 A.2d 171, 192 (1963); Galford v. Burkhouse, 330 Pa.

---

[9]      In Columbia Gas Systems, Inc., the Third Circuit held that the determination
whether particular funds held by the debtor were held in trust was a question of federal
common law.  997 F.3d at 1055-58.   In that case, the debtor received the funds from its
upstream supplier of natural gas for the specific purpose of providing refunds to the
debtor's downstream customers. Columbia Gas Systems involved a debtor whose
revenues were derived from operations in an industry subject to substantial federal
regulation.  Subsequently, most courts have read the decision narrowly to mean only that
when a bankruptcy court evaluates the scope of a federally created statutory property
right, federal common law applies.  See In re Brockway Pressed Metals, Inc., 2007 WL
960047, at * 17-18 & authorities cited therein (Bankr. W.D. Pa. March 20, 2007).  As the
Columbia Gas Systems court itself acknowledged, courts should follow state law, rather
than developing rules of federal common law, "unless state law would undermine the
objectives of the federal statutory scheme and there is a distinct need for nationwide
standards."  997 F.2d at 1055.  I perceive no need for national uniformity with respect to
the law of resulting trusts,  making it appropriate to apply Pennsylvania law in this case.
Accord, In re Orion Refining Corp., 341 B.R. 476 (Bankr. D. Del. 2006) (applying state
law of constructive trusts in bankruptcy case).  But see In re Edison Brothers, Inc., 243
B.R. 231 (Bankr. D. Del. 2000).

Super. 21, 29-30, 478 A.2d  1328, 1332 (1984); <u>Mermon v. Mermon</u>, 257 Pa. Super. 228,

233-34, 390 A.2d  796, 798-99 (1978).

Chapter 12 of the Restatement 2d is divided into four (4) topics.  The first topic is

titled "General Principles."  Included in the first topic is Restatement 2d §404, which

provides:

> **Where Resulting Trust Arises**
>
> A resulting trust arises where a person makes or causes to be made a
> disposition of property under circumstances which raise an inference that
> he does not intend that the person taking or holding the property should
> have the beneficial interest therein, unless the inference is rebutted or the
> beneficial interest is otherwise effectively disposed of.

The Pennsylvania Supreme Court has repeatedly cited §404 of the Restatement 2d

with approval. <u>Mooney</u>, 510 Pa. at 520-21; 510 A.2d at 346 (1986); <u>In re Summers'</u>

<u>Estate</u>, 424 Pa. 195, 199, 226 A.2d 197, 199 (1967); <u>Policarpo</u>, 410 Pa. at 545, 189 A.2d

at 172; <u>Godzieba v. Godzieba</u>, 393 Pa. 544, 548, 143 A.2d 344, 347 (1958). Pennsylvania

courts have adopted the legal principle set forth in §404: that a resulting trust arises when

a person transfers property under circumstances that raise an inference that the transferor

does not intend the person taking or holding the property to have the beneficial interest

therein --  unless the inference is rebutted.  <u>E.g.</u>,  <u>Mooney</u>, 510 Pa. at 520-21, 510 A.2d at

346;  <u>Chambersburg Trust Co. v. Eichelberger</u>, 403 Pa. Super. 199, 203, 588 A.2d 549,

550 (1991).

After stating the general principle regarding resulting trusts in §404, the

Restatement 2d applies those principles in more specific contexts.  The second and third

topics of chapter 12 of the Restatement 2d address situations in which problems with an express trust may lead a court to determine that a resulting trust exists:

> (1)  where an express trust fails, <u>see</u> Restatement 2d §§411-429; and
>
> (2)  where an express trust does not exhaust the trust estate, <u>see</u> Restatement 2d §§430-39.

The fourth and final topic in chapter 12 of the Restatement 2d involves resulting trusts arising where property is transferred to one person and the purchase price is paid by another ("purchase-money resulting trusts").[10]  This type of resulting trust can arise in the absence of an express trust: <u>i.e.</u>, when the transferor did not manifest an intent to create a trust, but the circumstances nonetheless create an inference that such an intention existed.[11]  <u>See</u> Restatement 2d §440. [12]

---

[10]     The term "purchase-money resulting trust" is employed in the <u>Restatement (Third) of Trusts</u> §9 (American Law Institute 2003) ("the Restatement 3d").  As stated in the text, the Restatement 2d has been adopted by the Pennsylvania courts.  I am unaware of any Pennsylvania appellate decisions that have cited or adopted the Restatement 3d.  I cite the Restatement 3d only as a general authority on the subject at hand.

[11]     The commentary in the Restatement 2d provides a helpful explanation of the nature of a resulting trust in the non-express trust context:

> A resulting trust differs from an express trust in the way it was created.  An express trust is created only if the settlor manifests an intention to create it
> .  .  .   by written or spoken words or conduct  .  .  .  .
>
> On the other hand, **in the case of a resulting trust it is not necessary to show that the settlor manifested an intention to create it.**  A person who seeks to establish the existence of a resulting trust does so by showing circumstances which raise an inference that the person making or causing a transfer of property did not intend to give to the transferee a beneficial interest in the property.  .  .  .
>
> **A resulting trust is imposed for the purpose of carrying out what it appears from the circumstances under which a disposition of**

**property is made would probably have been the intention of the person making the disposition if he had thought of the matter**.

Restatement 2d, ch. 12, Introductory Note, at 323-24  (emphasis added) (quoted in Mooney, 510 Pa. at 521, 510 A.2d at 346); accord, Restatement 3d §7, comment a., at 86 (American Law Institute 2003) ("the Restatement 3d") ("[A] resulting trust arises from an intention that is legally attributed to the transferor based on the nature of the transaction, rather than from manifested intent.").

[12]    After reviewing the substance and structure of chapter 12 of the Restatement 2d, it is not clear to me whether topics 2, 3 and 4 (i.e., §§411-29; §§430-39; and §§440-60)  are the exclusive applications of the general principle expressed in §404 or, alternatively, whether §404 provides an independent basis for finding the existence of a resulting trust, even when the conditions in topics 2, 3 and 4 are not satisfied.  Specifically, are there circumstances, other than the purchase-money context, in which the transferor's intent to retain a beneficial interest in the transferred property can be inferred solely from the circumstances of the transaction and without any oral or written manifestation of such intent?  Put another way, does the concept of a non-express, non-purchase money resulting trust exist in Pennsylvania?

    The Restatement 2d §404 and its commentary could be read to suggest that a purchase-money resulting trust is but one example of a type of resulting trust that may be found in the absence of an express trust.  See Restatement 2d, ch. 12, Introductory Note, at 324 (a resulting trust may be imposed by the court to effectuate the "intention of the person making the disposition if he had thought of the matter."); see also Mooney, 510 Pa. at 521 & n.3, 510 A.2d at 346 & n.3 (referring to a transaction in which one party pays the purchase price and places title in the name of another as a "typical instance" in which the inference under §404 the Restatement 2d may be drawn).  However, I have not located any case in which a Pennsylvania court found a non-express resulting trust to exist -- other than cases involving purchase money resulting trusts.  This suggests that purchase-money resulting trusts may be the only type of non-express resulting trust recognized in Pennsylvania.  Further, the Restatement 3d appears to suggest that the only type of non-express, resulting trust recognized in the law is a purchase-money resulting trust.  See Restatement 3d §7, comment a., at 87.

    As explained in Part IV.B, infra, the case sub judice involves a transfer in which the transferor manifested an intent to retain a beneficial interest in the transferred property.  It involved a failed, express trust and is governed by the Restatement 2d §411. Therefore, I need not decide if the Restatement 2d §404, by itself, provides authority for the imposition of resulting trust or whether a court may find the existence of a resulting trust only when the conditions of either §§411, 430 or 440 of the Restatement 2d are satisfied.

The party seeking to establish the existence of a resulting trust bears the burden of proof. That burden has been described in various ways: "'clear, explicit and unequivocal' or . . . 'clear, precise and unequivocal' or 'clear, precise and convincing and satisfactory' or 'clear, precise and indubitable.' " Galford, 330 Pa.Super. at 30, 478 A.2d at 1333 (citations omitted). Parole evidence is admissible to establish the existence of a resulting trust. Id. & authorities cited therein. If the burden of proof is met and a resulting trust arises, the trust is not subject to the Statute of Frauds. See 33 P.S. §2; Galford, 330 Pa. Super. at 29-30, 478 A.2d at 1333.

This heightened standard of proof serves a very important purpose, particularly in cases in which the court is asked to find that a resulting trust has arisen, notwithstanding the existence of an unambiguous document which, on its face, purported to be an unconditional transfer of the transferor's beneficial interest in property. In such a case, a party asserting the existence of a resulting trust will undoubtedly seek the admission of evidence that might otherwise be barred by the parole evidence rule. It is therefore important that there be a limitation on the use of the resulting trust doctrine. Otherwise, it could be used to circumvent legal principles (not only the parole evidence rule, but the Statute of Frauds as well) that provide much of the foundation of state contract law. The heightened standard of proof suggests that a court should declare the existence of a resulting trust only when it is firmly convinced by the evidence that the transferor did not intend to transfer the beneficial interest in the property at issue.

### 3.  *Galford v. Burkhouse*

Many of the reported decisions in Pennsylvania regarding resulting trusts involve the application of the purchase-money resulting trust doctrine.  See, e.g., McHenry v. Stapleton, 443 Pa. 186, 278 A.2d 892 (1971); Geyer v. Thomas, 364 Pa. 242, 72 A.2d 89 (1950);  Grubb v. Delathauwer, 274 Pa. Super. 511, 418 A.2d 523 (1980); Potoczny v. Dydek, 192 Pa. Super. 550, 162 A.2d 70 (1960).  The facts of this case do not fit squarely into the purchase money resulting trust category.  I interpret that category as involving a unified transaction in which one person pays the consideration, but title is transferred contemporaneously to another at the payor's direction.

In this case, I infer from the record that Mrs. Stewart (and her deceased husband) paid the consideration for the purchase of the Property.  However, title was not contemporaneously placed in the name of a third party (the Debtor).  Mrs. Stewart's purchase of the property occurred many years prior to the transfer to the Debtor.  Thus, the principles set forth in the Restatement 2d governing purchase money resulting trusts are inapplicable.

My research reveals only one reported decision in Pennsylvania involving an asserted resulting trust based upon a recorded fee simple transfer by a parent to a child, made many years after the purchase of the property.  Due to the similarity to the facts before me, I find it helpful to focus briefly on Galford v. Burkhouse.

In Galford, the transferor, an elderly man, transferred the property at issue to his son.  The transfer was made after the transferor had discussions with his children concerning who might be best qualified to manage the property for the transferor's

benefit.  Subsequently, the transferor decided that he wished to transfer the beneficial

interest in the property to his daughter.  His son failed to honor that request.  The

transferor initiated litigation, later carried on by his daughter, to obtain a judicial

declaration that the property was transferred  to the son subject to a resulting trust.[13]

Citing §411 of the Restatement 2d, the Galford court held, based on the trial

testimony, that the transferor intended to transfer only bare legal title to his son and that

the evidence was sufficient to establish a resulting trust in favor of the transferor.  330

Pa. Super. at 29-31, 478 A.2d at 1333-34.[14]

---

[13]    By the time the litigation reached the Pennsylvania Superior Court, the transferor
in Galford had died.  However, in his will, he named his daughter as his sole beneficiary.
Thus, if his son held the property subject to a resulting trust, the property in dispute
would pass through the transferor's decedent's estate to his daughter.

[14]    The court also cited with approval Restatement 2d §404.  However, I do not read
Galford as a case in which the court inferred the intent of the transferor solely from the
circumstances of the transaction.  The Superior Court opinion stated specifically that
there was both oral and written evidence of the transferor's intent to retain the beneficial
interest in the subject property.  330 Pa. Super. at 24 & 31, 478 A.2d at 1330 & 1334.
Therefore, I read Galford as involving a failed, express, oral trust that gave rise to a
resulting trust under §411 of the Restatement 2d.

I note that the result in Galford may be inconsistent with the Restatement 2d
§411, comment o., at 341 ("[W]here land is transferred inter vivos upon an intended trust
for the transferor or a third person, but the instrument of conveyance is absolute in its
terms and the intention to create a trust does not appear therein, the transferee does not
hold the land upon a resulting trust for the transferor  . . . ."); see also Restatement 2d
§38(1) (parole evidence rule applies to inter vivos transfer by written instrument that
purports to transfer beneficial interest in transferred property); Restatement 3d §8,
comment h., at 110 (principle that failed express trust gives rise to a resulting trust may
not apply in some cases "because evidence in support of the allegation is not admissible
as the result of the failure to comply with [the statute of frauds' or statute of wills']
formal requirements or because, if admissible, the evidence is not sufficiently
persuasive"); Truver v. Kennedy, 425 Pa. 294, 304-06 & n.3, 229 A.2d 468, 473 & n.3
(1967) (finding that the Statute of Frauds and the parole evidence rule precluded the
transferor from establishing that a deed that was absolute on its face conveyed real estate
subject to an express oral trust and "find[ing] no justification in the record upon which to
raise a resulting trust").

**B.**

After consideration of the record in this case and the legal principles discussed above, I conclude that the Debtor has met his burden of proof  and established the existence of a resulting trust.  <u>See</u> Restatement 2d §411.  Based on the totality of the circumstances and employing the requisite standard of proof, I find that that Mrs. Stewart did not intend to transfer her beneficial interest in the Property to the Debtor.[15]  Rather, the transfer from Mrs. Stewart to the Debtor in December 2002 was motivated entirely by estate planning purposes, as Mrs. Stewart testified.  <u>See</u> <u>Dunham v. Kisak</u>, 192 F.3d 1104 (7th Cir. 1999).  Further, I find that the Trustee has not rebutted the evidence which supports the existence of the resulting trust.  <u>See</u> Restatement 2d §412.  Therefore, I conclude that the transfer effected by the First Deed was subject to a resulting trust in favor of Mrs. Stewart.  It follows that the Debtor did not have any beneficial interest in the Property to convey to Ms. Harris through the Second Deed.  At most, the Second Deed conveyed a one-half, bare legal interest in the Property to Ms. Harris.[16]

At the time Mrs. Stewart executed the First Deed, Mrs. Stewart had been living there for more than 50 years.  Since 1990, when her husband died, she lived there by herself and managed to pay the expenses associated with home ownership.  After she

---

Despite the tension among the authorities cited above, I conclude that the result in <u>Galford</u> is consonant with the equitable principles which give rise to the resulting trust doctrine and therefore, I consider the <u>Galford</u> decision to be an accurate expression of Pennsylvania law on the subject of resulting trusts.

[15]  I find that the evidence that Mrs. Stewart intended to retain the beneficial interest in the Property to be clear and convincing.

[16]  I note that the record co-owner, Ms. Harris, was served with the Motion.  She has not appeared in the contested matter to challenge the contention of her mother and brother that she holds no beneficial interest in the Property.

transferred the Property to the Debtor in 2002, she continued to reside there and pay her

bills. [17]  There was no material change in the conduct of either Mrs. Stewart of the Debtor

thereafter.  These circumstances convince me that that Mrs. Stewart's decision to execute

a deed in favor of her son was motivated wholly by the estate planning advice she

received from friends, sound or not.  I perceive no other likely explanation for the

Debtor's sudden transfer of the Property in 2002, and no event or change in

circumstances prior to the transfer was brought to my attention to suggest a different

purpose.  There is also evidence that suggests that Mrs. Stewart expressed her intentions

to the Debtor.[18]  On this record, and based as well on my crediting the testimony of the

Debtor and Mrs. Stewart, I am firmly convinced that Mrs. Stewart did not intend to

transfer a beneficial interest in the Property when she executed the First Deed.[19]

Furthermore, the subsequent purported transfer, via the Second Deed, is

consistent with and supports my interpretation of the first transfer.  The Debtor executed

the Second Deed at Mrs. Stewart's request.  Her reasons for requesting the transfer of the

one-half interest to her daughter are consistent with her explanation for the first transfer.

---

[17]   Documentation of the payment of these expenses was admitted into evidence at trial.

[18]   "[V]erbally, my mother told me that, you know, the house would remain hers until she
died."  (N.T. 28).

[19]   I am cognizant of the presumption under Pennsylvania law that a gift arises when the
transfer of property is to a "wife, child or other natural object of the bounty of the person
who contributed to the purchase price."  Fenderson v. Fenderson, 454 Pa. Super. 412,
424, 685 A.2d 600, 606 (1996); accord, Hornyak v. Sell, 427 Pa. Super 356, 359-360,
629 A.2d 138, 140 (1993); see also Restatement 2d §443.  However, this presumption can
be rebutted, and a resulting trust established, by showing that the transferor did not intend
the transferee to have the beneficial interest in the property.  Mermon, 257 Pa. Super. at
234, 390 A.2d at 798; Restatement 2d §443.  Here, as already discussed, Mrs. Stewart's
oral expression of her intent and the totality of the circumstances in which Mrs. Stewart
transferred the Property to the Debtor rebut the presumption of a gift.

The Debtor promptly complied with his mother's request, again suggesting that both

parties considered the Property to be hers to control.  The second transfer occurred far in

advance of the Debtor's bankruptcy filing, leaving no reason to draw any inference that it

was motivated by an intent to hinder or delay the Debtor's creditors.  Thus, the record

suggests no rationale for the second transfer that would undermine my finding that a

resulting trust exists.

Finally, the Trustee has not developed any convincing evidence to rebut the

evidence which supports a finding of a resulting trust, perhaps because the circumstances

so strongly suggest that Mrs. Stewart did not intend to transfer away her beneficial

ownership of her home.[20]  The Trustee's primary argument is that the court's

determination of Mrs. Stewart's intent should be derived solely from the plain language

of the First Deed.  Since, on its face, the First Deed unequivocally purports to convey a

fee simple interest to the Debtor, the Trustee suggests that Mrs. Stewart's intention to

convey a beneficial interest in the Property to her son is obvious.

In support of this argument, the Trustee has cited a number of Pennsylvania

decisions for the proposition that when the language of a deed is clear, the court should

---

[20]   The Trustee developed one inconsistency at trial:  the Debtor's claimed tax deduction
for mortgage interest payments that he did not pay.  Presumably, if the Debtor were not
the beneficial owner of the Property, as he now contends, this tax deduction might have
been improper and he may be subject to tax liability.  Such tax liability may be
nondischargeable under 11 U.S.C. §523(a).  I considered the claimed tax deduction in my
evaluation of the evidence, but I conclude that its significance is outweighed by the other
circumstances suggesting that Mrs. Stewart did not intend to transfer her beneficial
interest in the Property to the Debtor.  Also, I gave some weight to the Debtor's
testimony that he told his mother that he was taking the tax deduction and she responded
that she had no problem with him doing so.  (N.T. 21).  The conversation carries an
implication that the Debtor believed that he needed his mother's approval to take the tax
deduction and is further evidence of their shared perception that she remained the
beneficial owner of the Property.

ascertain the parties' intent solely from the four corners of the deed.[21]  However, none of

the cases Trustee cited involve a party seeking to establish the existence of a resulting

trust.

Of the cases cited by the Trustee, <u>Yasipour</u> is the most analogous factually to this

case.  <u>Yasipour</u> involved a debtor who made a prepetition transfer to a close relative (his

spouse).  In an attempt to foil a trustee's effort to set aside the transfer and sell the

property, the debtor asserted that the transfer was subject to a trust in his favor and that

his interest in the property could be exempted pursuant to 11 U.S.C. §522.

In <u>Yasipour</u>, the court found that the deed unambiguously conveyed the debtor's

beneficial interest and that the parole evidence rule precluded the debtor from attacking

the deed with extrinsic evidence.  Unlike this case, however, it appears that the debtor in

that case did not argue that the property was subject to a resulting trust. Rather, he argued

that it was subject to a constructive trust because his spouse acted inequitably in declining

to transfer the property back to him.

Under Pennsylvania law, constructive trusts are quite different than resulting

trusts.  <u>E.g.</u>, <u>Galford</u>, 330 Pa. Super. at 29-30, 478 A.2d at 1333 (imposition of resulting

trust does not require a finding of fraud, undue influence, duress, mistake, confidential

relationship, or unjust enrichment as is required for imposition of constructive trust);

---

[21] The cases cited by the Trustee include: <u>Culp v. Consol Pennsylvania Coal Co.</u>, 1989
WL 101553, at *8 (W.D. Pa. May 4, 1989) (quoting <u>Teacher v. Kijurina</u>, 365 Pa. 480,
486, 76 A.2d 197, 200 (1950) (citing in turn <u>Cundey v. Hall</u>, 208 Pa. 335, 57 A. 761
(1904)); <u>In re Yasipour</u>, 238 B.R. 289, 291 (Bankr. M.D. Pa. 1999); <u>In re Conveyance of
Land Belonging to City of DuBois</u>, 461 Pa. 161, 172, 335 A.2d 352, 358 (1975); <u>Joiner v.
Southwest Central Rural Electric Co-op Corp.</u>, 786 A.2d 349, 352 (Pa.Cmwlth. 2001)
(citing <u>Dowgiel v. Reid</u>, 359 Pa. 448, 59 A.2d 115 (1948)); <u>Hardes v. Penn Charcoal &
Chemical Co.</u>, 175 Pa. Super. 431, 436, 107 A.2d 176, 178 (1954); <u>Ray v. Luce</u>, 7 Pa. D.
& C.4[th] 580, 582-83 (C.P. Crawford 1990).

Commonwealth by Kane v. Hilton, 24 Pa. Cmwlth. 285, 288, 355 A.2d 841, 843 (1976)

(constructive trust is a remedy to prevent unjust enrichment and, unlike a resulting trust,

is not dependent on the intentions of the parties);  Ardolino v. Ardolino, 83 D. & C. 2d

127, 1953 WL 4435 (C.P. Allegh. 1952);[22]  see also In re Charles River Press

Lithography, Inc., 338 B.R. 148 (Bankr. D. Mass. 2006).[23]  Therefore, legal precedent

regarding the imposition or non-imposition of a constructive trust is not determinative in

a case in which the existence or non-existence of a resulting trust is at issue.

     Even if Yasipour was correctly decided on the legal theory presented by the

debtor therein, it is inapposite in a resulting trust case.  As stated earlier, the parole

evidence rule is inapplicable when a party asserts the existence of a resulting trust.

---

[22]  In Ardolino, the court stated:

> A constructive trust is one implied by law, a resulting trust is also implied.
> There is a distinction between these latter two insofar as a constructive
> trust is a law-imposed trust, while a resulting trust is a law-inferred-as-a-
> fact trust.  Express and resulting trusts are trusts by the real or presumed
> intentions of the parties, but constructive trusts are trusts in invitum.

83 D.&C. 3d at 133; 1953 WL 4435, at *4.  A trust in invitum has been defined as a trust
imposed contrary to the trustee's intention.  Black's Law Dictionary 1683 (4th rev. ed.
1968).

[23]  In Charles River Press Lithography, the court stated:

> A *resulting trust* is an equitable device, employed to correct a defect in the
> execution of a transferor's intent.  .  .  .
>
>     On the other hand, a *constructive trust*  "is imposed not because of
> the legally inferred intention of the parties but because the court concludes
> that the person holding the title to the property, if permitted to keep it,
> would profit by a wrong or would be unjustly enriched, having acquired
> the property through fraud, mistake, breach of duty, and the like."

338 B.R. at 160 –161 (citations omitted) (emphasis in original).

Accord, Teacher, 365 Pa. at 485-866, 76 A.2d at 200-01 (applying parole evidence rule in construing a deed, but pointing out that no claim of resulting trust was asserted). Therefore, the words within the four corners of the First Deed are not dispositive on the issue of Mrs. Stewart's intent when she transferred an interest in the Property to the Debtor.

Alternatively, the Trustee asserts that the plain language of the First Deed at least compels the conclusion that the Debtor has not met his burden of proof required for the existence of a resulting trust. I understand this argument to be that consideration of the plain language of the First Deed creates doubt about Mrs. Stewart's intent and should cause me either to decline to believe the testimony of the Debtor and Mrs. Stewart or to consider it rebutted. While this argument is analytically logical, I am unwilling to give the language of the First Deed as much weight in the determination of Mrs. Stewart's intent as the Trustee requests. I consider it highly unlikely that she had any appreciation of the specialized meaning of the words in the First Deed or that she was aware that alternative wording in the deed would have resulted in a transfer with different legal consequences more consistent with her actual intentions.[24] While there may have been a better way to achieve her estate planning goals, she signed the First Deed, not for the purpose of transferring her beneficial interest in the property, but only to transfer a future interest in the Property -- which is precisely why a resulting trust arises in this case.

In the end, given the inferences and factual findings that I draw from the evidence, I conclude that this case is controlled by the Pennsylvania Superior Court's

---

[24] Mrs. Stewart is a high school graduate and has no legal training. She decided to transfer the Property to her son based on suggestions made to her by others. Her actions were motivated by a desire to employ a lawful means to minimize the costs attendant to the transfer of her property to her heirs upon her death.

<u>Galford</u> decision, summarized in Part IV.A.3., <u>supra</u>.  The principle that I draw from

<u>Galford</u> is that clear and convincing evidence of a transferor's intention to retain the

beneficial interest in real property transferred gratuitously to a close relative can

overcome a presumption that a gift was intended, the parole evidence rule and the

Statute of Frauds and support a finding that property was transferred subject to a

resulting trust.  As in <u>Galford</u>, all of the trial testimony in this case was consistent.  This

testimony established that Mrs. Stewart intended to transfer the Property to the Debtor in

trust and that her intentions were ineffective due to the wording of the instrument used to

effect the transfer.  I have credited that testimony.  Therefore, I find that the facts proven

at trial are sufficient to establish that Mrs. Stewart's transfer of the Property to the

Debtor was subject to a resulting trust in favor of Mrs. Stewart.


## V.    <u>CONCLUSION</u>

For the reasons set forth above, I will deny the Trustee's motion for authority to

sell the Property and the Debtor's request for an injunctive relief.

An Order consistent with this Memorandum will be entered.


**Date:  May 3, 2007**

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

21

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRCT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | JOHN S. STEWART, JR., | : | CHAPTER 7 |
| | | : | |
| | Debtor | : | Bky. No. 05-31747ELF |
| | | : | |

_____

| | | | |
|---|---|---|---|
| JOHN S. STEWART, JR., | | : | |
| | | : | |
| | Plaintiff, | : | Adv. No.  06-119 |
| | | : | |
| v. | | : | |
| | | : | |
| CHRISTINE C. SHUBERT, TRUSTEE | | : | |
| | | : | |
| | Defendant | : | |

_____

# <u>O R D E R</u>

**AND NOW,** upon consideration of the motion of Christine C. Shubert, Trustee's Motion to Sell Property Pursuant to 11 U.S.C. §363(h) filed in Bky. No. 05-31747 ("the Motion"), the Debtor's Complaint requesting a permanent injunction and declaratory relief filed in Adv. No. 06-119 ("the Complaint"), and after a trial, and upon consideration of the parties' post-trial memoranda, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1. The Motion is **DENIED**.

2. **JUDGMENT** is entered in favor of Defendant Shubert and against the Plaintiff in the adversary proceeding.

3. The Clerk shall enter this order on the docket in the main case and in the adversary proceeding.

4. The Clerk shall **CLOSE** the adversary proceeding.

**Date:  May 3, 2007**

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**